## TILGHMAN FOXWELL

*vs.*

## TIMOTHY SLAUGHTER.

Kent, Sept. T. 1880.

*Purchase money mortgage; priority of, not devested by judicial sale under another mortgage executed at same time; unrecorded agreement to postpone lien.*

Under the facts appearing in this case the purchaser of land at a judicial sale on *scire facias* upon a mortgage cannot restrain the proceeding to judgment, by an assignee, of a purchase money mortgage upon the same land, duly recorded and open to his inspection, and executed at the same time as the mortgage on which the sale was had, although recorded later, on the grounds that it was agreed between the parties to both mortgages at the time of their execution (but not expressed therein) that the lien of the purchase money mortgage was to be postponed to that of the other mortgage, and that the declarations of third parties, and the general understanding, were to the effect that the sale at which he purchased would pass a free title.

BILL TO RESTRAIN THE PROSECUTION OF A WRIT OF SCIRE FACIAS TO ENFORCE A PURCHASE MONEY MORTGAGE, ON MOTION TO DISSOLVE PRELIMINARY INJUNCTION AND TO DISMISS THE BILL.—The grounds upon which the complainant asks for an injunction may be briefly stated, as follows: that he became the purchaser of a tract of land described in the bill, at a sale thereof made by the Sheriff of Kent County on February 13, 1876; that said land was so sold by said sheriff under and by virtue of a writ of the State of Delaware of *levari facias,* issued out of the Superior Court of the State, in and for Kent County, at the suit of the Diamond State Building & Loan Association of the Town of Smyrna, against John Garner and Wilmina, his wife and terretenant; that said land was conveyed by said sheriff, under and by virtue of said sale, and the confirmation thereof by said superior court, to the complainant on the 17th day of October, 1876; that said *levari facias* was issued upon a

judgment recovered in said court by proceedings by *scire facias* issued upon an indenture of mortgage executed by John Garner and Wilmina, his wife, to the Diamond State Building & Loan Association of the Town of Smyrna, bearing date the 8th day of February, 1869, and recorded on the 10th day of February, 1869. That said land was purchased by said Garner, of one Thomas Slaughter, who received in payment thereof a deed for a house and lot in Kenton, in said county, and $500 in money, which Garner, at the instance of said Thomas Slaughter, borrowed from the said Building & Loan Association, and also a mortgage for the balance of the purchase money on the tract of land so sold by Slaughter to the said Garner.

The bill states that at the time the said $500 was borrowed by Garner from the said Building & Loan Association, and so as aforesaid paid to the said Slaughter, the said Garner and wife executed a purchase money mortgage of said land, so purchased by him of Slaughter, for the balance of the purchase money thereof remaining unpaid, and also a mortgage of said lands to the said Building & Loan Association for the said sum of $500, so as aforesaid loaned by said association to the said Garner; that the execution of the said two mortgages, by Garner and wife to the said Thomas Slaughter and the said Diamond State Building & Loan Association of the Town of Smyrna, was on the same day and at the same place; and that it was understood and agreed by the said Thomas Slaughter, the said Garner and the officers of the said Building & Loan Association, that the mortgage in favor of said association should be the first mortgage on the lands so purchased by Garner of Slaughter, and should have preference, as a lien, over the mortgage executed by Garner and wife to Slaughter.

The amount of the mortgage by Garner and wife to the said Diamond State Building & Loan Association of the Town of Smyrna was the sum of $500, real debt, and the real debt of the mortgage to Slaughter, being the balance of the purchase money for said land conveyed by said Slaughter to Garner, was $600.

The fifth paragraph of the bill is in these words: "Your orator has been informed, and believes and charges it to be true, that at the time of the execution and delivery of the said two indentures of mortgage, of the said John Garner and his wife, mentioned in the next preceding paragraph, it was the positive and distinct understanding and agreement between the said Thomas Slaughter and the said the Diamond State Building & Loan Association of the Town of Smyrna, that although his, the said Thomas Slaughter's, mortgage was to secure part of the purchase money of said farm or tract of land, yet that his said mortgage was not to be the first lien or incumbrance on the same, but that the said mortgage executed by the said John Garner and wife to the said the Diamond State Building & Loan Association of the Town of Smyrna should be the first lien and incumbrance thereon; and that the said mortgage to the said Thomas Slaughter should be subsequent and posterior to the lien of the said mortgage to the said the Diamond State Building & Loan Association of the Town of Smyrna; and that the said Thomas Slaughter then and there distinctly agreed that the said the Diamond State Building & Loan Association of the Town of Smyrna should have all the benefit and advantages which might accrue or be derived by reason of its mortgage being the first lien and incumbrance on said farm or tract of land. That the officers of the said the Diamond State Building & Loan Association of the Town of Smyrna would not have made said loan to the said John Garner, and would not have accepted the mortgage on said farm or tract of land, as security for said loan, had it not been the agreement and understanding between them and the said Thomas Slaughter that the mortgage to the said the Diamond State Building & Loan Association of the Town of Smyrna should be the first lien on said farm or tract of land, and have preference over all other liens thereon. That the said Thomas Slaughter was very anxious and desirous that the said the Diamond State Building & Loan Association of the Town of Smyrna should make the said loan to the said

John Garner, as he, the said Thomas Slaughter, was to receive and did receive all the money loaned to said John Garner by the said the Diamond State Building & Loan Association of the Town of Smyrna and, in consideration of getting the money borrowed by said John Garner of the said the Diamond State Building & Loan Association of the Town of Smyrna, did agree that the mortgage should be posterior to the lien of the mortgage to the said the Diamond State Building & Loan Association of the Town of Smyrna."

It is sought by the bill to charge the defendant with knowledge of the supposed agreement and understanding between Thomas Slaughter, Garner and the Diamond State Building & Loan Association. Such knowledge is denied by the defendant.

The mortgage to the said association was recorded in the recorder's office of the county, on the 10th day of February, 1869, two days after the date thereof; and the mortgage of Garner and wife to Thomas Slaughter was recorded in said office on the first day of March, 1869, twenty-one days after the same was executed, and in less than sixty days—the time fixed by law for recording purchase money mortgages, in order that their priority of lien may be preserved.

The complainant alleges that at the time he bought the said land at sheriff's sale he did not know of the existence of Thomas Slaughter's mortgage, and that he understood, and the people generally attending said sale understood, that the sheriff's deed for the land, made by virtue of his said writ and sale thereunder, would pass a free and unincumbered title to the same.

Timothy Slaughter, the defendant, was prosecuting the proceedings on his writ of *scire facias* to recover judgment therein on the mortgage which had been given to Thomas Slaughter, which had been assigned to the said Timothy Slaughter, when he was restrained from prosecuting his proceedings for that purpose by a preliminary injunction.

At the March Term, 1880, a motion on behalf of the defendant was made to dissolve said preliminary injunction, and to dismiss the bill.

*J. Alexander Fulton*, for defendant, for the motion :

I. The alleged agreement that the Building & Loan Association mortgage was to have preference over the Slaughter mortgage is invalid, even if true, because not in writing.

Parol evidence of intention, in the absence of fraud, surprise or mistake, is inadmissible to vary the description of land in a written contract of sale. *Dale* v. *Smith*, 1 Del. Ch. 1.

Under our statute even the surrender of a lien for one year must be in writing. *Logan* v. *Barr*, 4 Harrington, 546.

A parol contract relating to lands is void by the Statute of Frauds, and cannot be proved for any purpose, either of claim or defense. *Scotten* v. *Brown*, 4 Harrington, 324.

*Smith* v. *Jeffreys*, 15 Mees. & W. 661, is an instance of how strict is the rule in regard to the admission of parol evidence to vary a written contract. See also *Woodbridge* v. *Spooner*, 3 Barn. & Ald. 235 ; *Forsyth* v. *Kimball*, 91 U. S. 291 (23 L. ed. 352); *Hunt* v. *Adams*, 7 Mass. 518 ; *Paine* v. *M'Intier*, 1 Mass. 69 ; *Dix* v. *Otis*, 5 Pick. 38; *Spring* v. *Lovett*, 11 Pick. 420 ; *Townsend* v. *Weld*, 8 Mass. 146 ; *Conover* v. *Wardell*, 7 C. E. Green, 502 ; *Locander* v. *Lounsbery*, 9 C. E. Green, 417 ; *Pembroke Church* v. *Stetson*, 5 Pick. 506 ; *Thompson* v. *Ketcham*, 8 Johns. 190 ; *Van Bokkelen* v. *Taylor*, 62 N. Y. 105.

A written contract having no latent ambiguity can neither be qualified nor controlled, enlarged nor diminished, by evidence of a cotemporaneous parol understanding. *Daggett* v. *Johnson*, 49 Vt. 345.

The rule that parol proof cannot be admitted to explain or vary a written instrument should be more rigidly enforced in a case where the Statute of Frauds requires the contract to be in writing. *Lazear* v. *National Union Bank*, 52 Md. 78, 36 Am. Rep. 355.

Parol evidence is not admissible to show that the consideration passing between the parties, and the terms upon which a conveyance is expressed to have been made, are different from the deed itself. *Adams* v. *Hudson County Bank*, 2 Stockt.

535; *Stoutenbergh* v. *Peck*, 3 H. W. Green, 446; *Heck* v. *Vollmer*, 29 Md. 507; Dan. Ch. 676; 1 Greenl. Ev. §§ 275–277, 281.

A deed may be delivered to a stranger to take effect on a condition to be subsequently performed; but if it be delivered to the obligee on such a condition, the condition is a nullity and the delivery absolute. The terms of an agreement under seal cannot be varied by parol evidence. *Foley* v. *Cowgill*, 5 Blackf. 18.

Parol evidence cannot be admitted to vary the rights of creditors by record. *Neidig* v. *Whiteford*, 29 Md. 178.

It is not competent to show by parol that at the time of executing a bond the obligee agreed that the obligor should not be personally liable, but that the obligee would look to the mortgage security for payment. *Chetwood* v. *Brittan*, 3 H. W. Green, 334.

II. The defendant is a *bona fide* purchaser without notice, and is therefore not affected by the equitable circumstances charged in the bill, even if in fact they existed as charged. See *New York Chemical Mfg. Co.* v. *Peck*, 2 Halst. Eq. 37.

An assignee of a chose in action takes it subject to all the equity of the original obligor or debtor at the time, and not to latent equity residing in a third person against the obligee or assignor. *Murray* v. *Lylburn*, 2 Johns. Ch. 441.

Where a mortgagee, at the time of taking his mortgage, receives from a judgment creditor holding a previous judgment against the mortgagor a release of the lien of his judgment from the mortgaged premises, so as to give him a priority of lien, and the mortgagee fails to file and have his release noted on the record of the judgment,—the release is inoperative against a subsequent *bona fide* assignee of the judgment without notice of the existence of the release. *Mellon's Appeal*, 96 Pa. 475.

III. The complainant is an entire stranger to this alleged agreement, and if it were fully proved he can take nothing

5 DEL. CH.                    26

under it, because there is neither mutuality nor privity of contract. *Colyear* v. *Mulgrave*, 2 Keen, 98.

*H. R. Johnson* for complainant, in opposition to the motion :

The dissolution of injunctions is largely a matter of judicial discretion to be determined by the nature of the particular case under consideration. A dissolution does not necessarily follow upon the coming in of the answer denying the allegations of the bill upon which the injunction issued; and the court may, in the exercise of a sound discretion, refuse a dissolution and continue the injunction to the hearing, where the circumstances of the case seem to demand this course. *Chetwood* v. *Brittan*, 1 H. W. Green, 438 ; *Irick* v. *Black*, 2 C. E. Green, 189 ; *Firmstone* v. *De Camp*, 2 C. E. Green, 309 ; High, Inj. p. 528, § 899.

Especially will a judicial discretion be exercised where fraud is the gravamen of the bill ; or where it is apparent to the court that a dissolution of the injunction would result in greater injury and hardship than its continuance to the hearing; or where it is apparent that, by the dissolution, complainant would lose all the benefit which would otherwise accrue to him should he finally succeed in his cause. *Chetwood* v. *Brittan*, and *Firmstone* v. *De Camp*, *supra; Attorney General* v. *Oakland County Bank*, Walker, Ch. 90 ; High, Inj. pp. 528, 529, § 899.

The equities existing between the assignor and assignee of a chose in action not negotiable attend the title transferred to a subsequent assignee for value and without notice ; the latter takes the exact position of his vendor. The supposed distinction between latent equities, so called, and those existing between the original parties to the instrument, have been repudiated. *Bush* v. *Lathrop*, 22 N. Y. 535. (In this case the doctrine as to latent equities laid down in the case of *Murray* v. *Lylburn*, 2 Johns. Ch. 441, is examined and repudiated.)

The assignee of a mortgage, although a *bona fide* holder,

takes the same subject to all defenses existing between the original parties. *Ingraham* v. *Disborough*, 47 N. Y. 421.

One who takes an assignment of a mortgage takes it subject, not only to any latent equities that exist in favor of the mortgagor, but also subject to the like equities in favor of third persons. *Schafer* v. *Reilly*, 50 N. Y. 61.

A *bona fide* purchaser of a judgment from an assignee takes the same subject to any equities between the judgment creditor and his assignee. *Cutts* v. *Guild*, 57 N. Y. 229.

The assignee of two single bills given in consideration of an assignment, to be thereafter made, of an interest under a patent,—the obligees having after obtaining the bills refused to make the stipulated assignment,—takes them subject to the equities affecting them in the hands of the obligees. *Robinson* v. *Jefferson*, 1 Del. Ch. 244.

The assignee of a bond takes it subject to all the equities as between the original parties. *Oliver* v. *Lowery*, 2 Harrington, 467.

THE CHANCELLOR.—The records in the recorder's office were public, open to the inspection of the complainant; and if, instead of examining them, he chose to rely upon loose declarations of others, or the general understanding of people attending a public sale, he alone must suffer by his folly.

Title to lands, and liens thereon, are not to be affected by such declarations or understandings.

Timothy Slaughter, as the assignee of the purchase money mortgage executed by Garner and wife, has a right under the law of this State to prosecute his suit of *scire facias* to judgment, and under proper proceedings thereon to cause the said lands to be sold for the payment of his mortgage debt, notwithstanding the sale and sheriff's deed to Foxwell, mentioned in his bill of complaint.

The motion to dissolve the preliminary injunction and dismiss the bill is therefore granted; and the complainant must pay the costs in this cause in three months, or attachment.

Let a decree be drawn accordingly.